In Silberkraus v. Winnie, 158 App. Div. 50, 142 N. Y. Supp. 887, 888, the court discusses the claim of a defendant situated similarly to the one in the case at bar, to the effect that he had refused to agree on substantial terms of the bargain until plaintiff had waived his claim against defendant for a commission—thus emphasizing the distinction which, in the case at bar, requires a reversal of the judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

(84 Misc. Rep. 46)

## LUTER v. UNION RY. CO. OF NEW YORK.

(Supreme Court, Appellate Term, First Department. February 13, 1914.)

1. CARRIERS (§ 381*)—INJURIES TO PASSENGER—NEGLIGENCE.

Plaintiff, intending to pay his fare, with five other boys, climbed on the rear bumper of defendant's trolley car. After the car had gone a few hundred feet, the conductor came toward the boys, called to them to get off, and made threatening gestures, but was too far away to cause serious apprehension. Plaintiff and his companions sprang from the car, landing on their feet, when plaintiff ran onto the opposite track without looking for a car and was struck by a car going in the opposite direction. *Held*, that the facts were insufficient to raise an inference of actionable negligence on the part of the conductor in forcing plaintiff from the car by threats of personal violence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1476, 1479–1482; Dec. Dig. § 381.*]

2. CARRIERS (§ 280*)—INJURIES TO PASSENGERS—CARE REQUIRED.

The rule that a carrier is bound to exercise the highest degree of care to prevent injuries to passengers is limited to dangers arising from unsafe roadbeds, defective machinery, imperfect cars, and other considerations, and to situations from which grave injury may be expected, and has no application to injury to a passenger, after he has alighted, in being struck by a car passing on an adjoining track in an opposite direction.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1103, 1105, 1106, 1109, 1117; Dec. Dig. § 280.*]

Appeal from City Court of New York, Trial Term.

Action by Meyer Luter, an infant, by George Luter, his guardian ad litem, against the Union Railway Company of New York. From a City Court judgment in favor of plaintiff, defendant appeals. Reversed, and new trial granted.

Argued January term, 1914, before LEHMAN, PAGE, and BIJUR, JJ.

James L. Quackenbush, of New York City (J. Ralph Hilton, of New York City, of counsel), for appellant.

David Drechsler, of New York City (M. Spencer Bevins and Julius Blumofe, both of New York City, of counsel), for respondent.

BIJUR, J. Plaintiff sued for personal injuries resulting from the alleged negligence of the defendant.

[1] In May, 1912, plaintiff, who was then 13 years old, in company with five other boys, climbed on the rear bumper of one of defendant's trolley cars. Plaintiff stood almost at the extreme left of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bumper. According to his and his witnesses' testimony, after the car had proceeded a few hundred feet, the conductor, who had been collecting fares in the front of the car, came rapidly toward them, called to them to get off, and made threatening gestures. At this, plaintiff became frightened, and he and his companions sprang from the car, landing on their feet, some of them running to the right without injury. Plaintiff and his brother ran to the left and came upon the opposite track some six or eight feet away from the track on which they had been proceeding. On this other track, another of defendant's cars was approaching in the opposite direction. Plaintiff's brother was killed, and plaintiff was injured by that car, for which injuries he sues. The car from which plaintiff jumped was crowded at the time, even the rear platform being filled with passengers. No negligence is claimed as against the crew of the car which actually injured the plaintiff. The negligence alleged is that of the conductor in forcing plaintiff from the car on which he had been riding by threats of personal violence.

It is difficult to see how, upon this state of facts, any verdict in favor of plaintiff can be sustained. Except for the fact that in the case at bar plaintiff claims to have been able and to have had the intention to pay his fare, this case is almost precisely similar to Prenderville v. C. I. & B. R. R. Co., 131 App. Div. 303, 115 N. Y. Supp. 633. It was there pointed out that there was no assault, but that plaintiff simply "got frightened and fell off." It is true that in that case it is not claimed that the conductor had spoken to the plaintiff or ordered him to get off the car; but, on the other hand, in the case at bar, the evidence is almost conclusive to the effect that, at the time plaintiff jumped off, the crowded condition of the car and the distance of the conductor from the plaintiff must have made apparent—even to a boy's mind—that no immediate assault or the use of any force was possible. It seems difficult, under the circumstances, to escape the conclusion that, even on plaintiff's version, his act in jumping from the car was voluntary, because, as he himself testifies, he was frightened. He does not say, nor can he well maintain, that he was afraid of an assault by the conductor. His testimony is as follows:

"When we got on the car, the conductor was in front collecting fares, and when he came near us, about a seat away, I saw him with a mad face, so I got frightened and jumped. When he came in front of us, he had a mad face on and hollered to get off, and made a motion to swing at us, and I got frightened and jumped. I suppose the other boys jumped."

Apart from that, however, plaintiff alighted on his feet and was entirely uninjured. Thereupon, according to the testimony of his own witness, a police officer, who was standing on the front of the approaching car, plaintiff proceeded from the track on which he had alighted in complete safety, several steps to a position of danger in front of the other car on the other track. It is not even claimed that he looked or took any precaution before so proceeding, nor can there be a claim that he was by anything rendered incompetent to take care of himself. Indeed, he says:

"I did not fall; * * * I jumped off. I don't know where I was going. I must have taken some steps, but I don't remember. I don't remember if I was running."

In this state of the record, the decision in the Court of Appeals in Pinder v. Brooklyn Heights R. R. Co., 173 N. Y. 519, 66 N. E. 405, seems to be determinative to the effect that the conductor's act, if any there was, was not the proximate cause of plaintiff's injury, and, to say the least, that plaintiff's own negligence was a contributing cause. It may be remarked that in the Pinder Case the plaintiff was actually assaulted, namely, kicked from the platform of a moving car by the driver.

[2] These various considerations having been sufficiently presented by defendant's counsel on his motion to dismiss the complaint at the close of both the plaintiff's case and the whole case, an error of the learned trial court in the charge, to which defendant's counsel duly excepted, becomes the more significant. It was to the effect that it became the duty of the company, if plaintiff intended to become a passenger, "to use the highest degree of care to carry him safely." The rule of the highest degree of care is limited, for obvious reasons, to dangers arising from "unsafe roadbeds, defective machinery, imperfect cars, and other considerations, endangering the success of the undertaking," to situations "from which grave injury might be expected." Stierle v. Union Ry. Co., 156 N. Y. 70, 73, 50 N. E. 419, and on reargument 156 N. Y. 685, 50 N. E. 834. See, also, Kelly v. Met. R. R. Co., 89 App. Div. 160, 85 N. Y. Supp. 842. The rule has no application to the alleged conduct of the conductor in the case at bar, for that resulted, as might well have been anticipated, only in the plaintiff's alighting unhurt in a position of safety.

As this erroneous charge could scarcely have failed to be prejudicial, in the minds of the jury, to defendant's interests in a case presenting so nicely balanced questions of fact, the judgment must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

